## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HOWARD L. ABSELET, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-15-735-R |
| | ) | |
| MASSOUD AARON YASHOUAFAR, an | ) | |
| individual; SOLYMAN YASHOUAFAR, an | ) | **JURY TRIAL DEMANDED** |
| individual; ROXANNA YASHOUAFAR | ) | |
| ABOUDI, an individual; JUSTIN | ) | |
| YASHOUAFAR, an individual; RAYMOND | ) | |
| YASHOUAFAR, an individual; and JOHN | ) | |
| AND JANE DOES NOS. 1-20; | ) | |

## <u>COMPLAINT</u>

COMES NOW the plaintiff, Howard L. Abselet ("Abselet"), by and through his undersigned attorneys, and for his Complaint for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. ("RICO") and his alternative claim under state law for fraudulent transfer, alleges and states as follows:

1.     Abselet is an individual and resident and citizen of the State of New York.

2.     Defendant Massoud Aaron Yashouafar is a resident and citizen of the State of California.

3.     Defendant Solyman Yashouafar is a resident and citizen of the State of California.

4.     Defendant Roxanna Yashouafar Aboudi is a resident and citizen of the State of California.

5.     Defendant Justin Yashouafar is a resident and citizen of the State of California.

6.     Defendant Raymond Yashouafar is a resident and citizen of the State of California.

7.     John and Jane Does Nos. 1-20 are individuals who and entities which directed and participated in the enterprise described herein in violation of 18 U.S.C. § 1962(c) and/or with whom or which some or all of the above-named defendants have actively conspired to achieve the unlawful goals through the enterprise described herein in violation of 18 U.S.C. § 1962(d).

8.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, and, specifically, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO").

9.     As alleged herein, Abselet's alternative claim for fraudulent transfer forms part of the same case or controversy and this Court may exercise supplemental jurisdiction over such claim pursuant to 28 U.S.C. § 1367.

10.     Defendant Massoud Aaron Yashouafar, the lynchpin, instigator and mastermind of the enterprise alleged herein has, on numerous occasions, both prior to and after the entry of the judgment described herein, traveled to Oklahoma City, Oklahoma and within this judicial district performed activities relating to the ownership, operation and oversight of the First National Center, the rights of ownership to which asset he, in active concert or conspiracy with the above-named defendants, has deprived Abselet through his wrongful conduct, thus conferring personal jurisdiction over him upon this

Court and, as a result, nationwide personal jurisdiction over the remaining defendants pursuant to 18 U.S.C. § 1965(b) because the ends of justice would be met by the exercise of such jurisdiction due to, among other things, the location of the subject asset in this district, the numerous activities of these defendants with relation thereto, and the exorbitant costs of financing additional litigation in multiple forums throughout the nation in order to combat the wrongful acts of the defendants identified above.

11.    Venue is proper in this district pursuant to 18 U.S.C. § 1965(a) because, as set forth below, defendants Massoud Aaron Yashouafar and Solyman Yashouafar have and/or have had agents, including attorneys, property managers, real estate brokers, and employees and/or independent contractors for themselves and/or their companies, in this district, and transact and direct affairs in this district relating to the First National Center.

12.    Venue is also proper pursuant to 28 U.S.C. § 1391(b) because, as alleged below, a substantial part of the events giving rise to the claim and the property that makes up the subject of this action is situated in this district.

13.    This is no garden-variety business dispute transmogrified into a RICO violation.  Rather, the dispute itself was resolved long ago.  Instead, the allegations herein describe a woeful tale of a judgment debtor under a final, federal court judgment who has enlisted a cast of family members and business associates to assist him and his brother, also a judgment debtor, to engage in a willful, knowing, multi-year, fraudulent scheme to place the assets of Defendants Massoud Aaron Yashouafar and Solyman Yashouafar beyond the reach of creditors by, essentially, turning the prototypical version of what judgment creditors face in collection efforts on its head.

14.     While the typical judgment creditor may find itself lending money to, suing and obtaining a judgment against a corporate entity in an ordinary lending transaction, only to find the entity lacks sufficient assets to satisfy the judgment, such a creditor may utilize various alter-ego remedies in order to reach the assets of the individuals who directed the affairs of the company.

15.     In this scheme, Defendants Massoud Aaron Yashouafar and Solyman Yashouafar did the reverse.  These defendants borrowed funds in an individual capacity, only to utilize those funds to support their seemingly endless array of sham corporate entities.  When a judgment was obtained against them individually on the unpaid debt, their response to execution efforts was that their assets were held by their companies, which were not liable upon the debt.  Then, when Abselet attempted to execute upon their ownership interest in at least one of those companies, Defendants Massoud Aaron Yashouafar and Solyman Yashouafar, after representing to a federal district court on several occasions that they own that same company, suddenly reversed course, contending that they had more than 1 year prior transferred ownership of that company to a family member or members, in an attempt to send Abselet on yet another multi-year quest in another state, threatening Abselet and the United States Marshal with a lawsuit and claim for punitive damages should they represent to this or any other court that Abselet had indeed executed upon such shares and owned the company.

16.     On August 10, 2012, in a case styled *Abselet v. Alliance Lending Group, Inc., et al.*, Case No. CV11-00815 JFW, the United States District Court for the Central District of California entered final judgment in Abselet's favor and against defendants

4

Massoud Aaron Yashouafar and Solyman Yashouafar, jointly and severally, in the amount of $5,986,580.20 with interest accruing thereon at the rate of 6% per annum commencing on June 9, 2012 and $800,000 in attorney fees, such award also bearing interest at the rate of 6% per annum, commencing on June 27, 2012 (the "Judgment").

17.     The Judgment in Abselet's hands, and the rights underlying it, are sufficient property the deprivation of which confers standing upon Abselet under RICO. *Gutierrez v. Givens*, 989 F. Supp. 1033, 1040 (S.D. Cal. 1997).

18.     Such Judgment resulted from the false and misleading conduct in 2008 and 2009 of Defendants Massoud Aaron Yashouafar and/or Solyman Yashouafar in persuading Abselet to lend them approximately $6 million based on false representations that such loan was secured by a first mortgage on the home of said Defendants' parents, a representation which turned out to be entirely false, the home turning out not to be that of Defendants' parents, but rather a residential investment property, with the mortgage turning out to be a third mortgage, which was completely wiped out in a foreclosure.

19.     As alleged herein, prior to and after the August 10, 2012 entry of the Judgment, Defendant Massoud Aaron Yashouafar, as ringleader, with the active participation and direction of the other defendants named herein, engaged in an ongoing pattern of unlawful behavior in violation of the mail and wire fraud statutes, aimed at depriving Abselet of his property.

20.     Prior to and at the time the Judgment was entered, Defendants Massoud Aaron Yashouafar and Solyman Yashouafar owned one-hundred percent (100%) of the

equity interests of a California corporation, which since October 12, 1994 has been known as Alliance Property Investments, Inc.

21.     During the pendency of the aforementioned lawsuit which resulted in the Judgment, United States Magistrate Judge John E. McDermott entered an order on November 29, 2011, directing and ordering Defendants Massoud Aaron Yashouafar and Solyman Yashouafar to deliver to the levying officer any documents evidencing title to Alliance Property Investments, Inc.; however, said defendants steadfastly failed and refused to deliver any such documentation, including, without limitation, share certificates.

22.     As reflected in not one but four separate court filings filed from and after November 26, 2014 in a case styled *Howard L. Abselet v. Alliance Lending Group, Inc., et al.*, Case No. FJ-14-00004-F, United States District Court for the Western District of Oklahoma, and specifically ECF Document Nos. 81, 82, 105 and 116, Defendants Massoud Aaron Yashouafar and Solyman Yashouafar represented that they own Alliance Property Investments, Inc. owns directly, and through its ownership of a management company known as FNB-M-1, LLC, one-hundred percent (100%) of the equity interests of an Oklahoma limited liability company, First National Building I, LLC.

23.     As reflected in warranty deeds on file with the Oklahoma County Clerk, prior to and at the time the Judgment was entered, First National Building I, LLC owned a fifty-percent undivided interest in an iconic downtown Oklahoma City office skyscraper and office building, known as the First National Center, the value of which

had been determined by the United States Bankruptcy Court for the Western District of Oklahoma to be in excess of $25 million.

24.     Through execution of his Judgment against the Yashouafars upon their shares of Alliance Property Investments, Inc., Abselet would be able to obtain direct ownership and control of First National Building I, LLC and thereby, through partition, operation thereof, sale, or otherwise, convert such interest to cash and thereby satisfy his Judgment.

25.     Since 2012, both before and after the entry of Judgment, Defendant Massoud Aaron Yashouafar and Solyman Yashouafar, with the active concert, conspiracy, direction and participation of the other named defendants engaged in a pattern of conduct across state lines reflecting and demonstrating the existence of an enterprise by and through which these defendants engaged in, or conspired to engage in, racketeering activity which caused injury to Abselet's business or property by such conduct.

26.     Defendants Massoud Aaron Yashouafar, Solyman Yashouafar and others, including John and Jane Doe Defendants, did actively engage and conspire to engage in additional conduct designed and intended to falsely place title to the First National Center in the name of two Oklahoma entities, previously formed for such purpose, FNC-OKC I, LLC and FNC-OKC II, LLC, and in so doing, further commit mail or wire fraud via interstate commerce pursuant to 18 U.S.C. §§ 1341 and/or 1343.  In addition, at the time of the transaction, said Defendants further caused their agent in California to form, via wire communications, an Oklahoma corporation, known as FN Management, Inc., for the

purpose of collecting the rentals for the First National Center and distributing such funds across state lines to and for the benefit of these defendants.

27.     Specifically, in mid-October 2012, Defendants Massoud Aaron Yashouafar and Solyman Yashouafar with the active assistance and direction of John and Jane Doe Defendants, did voluntarily, knowingly, and willfully, cause certain trusts to send approximately $5.3 million, a sum far less than the fair market value of the First National Center, via wire communication across state lines to an escrow account administered in Oklahoma City, which funds were utilized to satisfy the debt owed to the lender to First National Building I, LLC and First National Building II, LLC, and to cause certain sham deeds and other closing documentation to be executed and sent via the mails and via wire communications to the escrow agent administering the transaction in Oklahoma City, which deeds purported to convey title first to an entity known as Joshua Paradise Holdings, LLC and, shortly thereafter, to entities owned by Defendants Massoud Aaron Yashouafar and Solyman Yashouafar, known as FNC-OKC I, LLC and FNC-OKC II, LLC, thereby further defrauding or attempting to defraud Abselet and his ability to recover upon the Judgment when, in truth, the transaction was a loan and referred to as such in communications related thereto, and the First National Center was still owned by First National Building I, LLC and First National Building II, LLC.

28.     Thereafter, Defendants Massoud Aaron Yashouafar, Solyman Yashouafar and others have repeatedly represented that these entities are not owned by Defendants Massoud Aaron Yashouafar and Solyman Yashouafar when, in fact, for several months after the October 2012 transaction, Defendant Massoud Aaron Yashouafar, by and

through his entities, had continued to manage the First National Center, collected the rents, and distributed such funds via wire communications across state lines, to himself and others in his web of paper companies.

29.    The actions of Defendant Massoud Aaron Yashouafar, with the active concert, conspiracy, and participation of defendant Solyman Yashouafar and John and Jane Doe Defendants did violate 18 U.S.C. §§ 1341 and/or 1343, commonly known as the mail and wire fraud statutes, in that said Defendants did voluntarily and intentionally, knowingly and willfully, devise or participate in a scheme to deprive Abselet of his Judgment and the attendant property rights associated therewith against them through utilization of the mails and wire communications; these defendants did so with the intent to defraud; it was reasonably foreseeable that the mails and/or interstate wire communications would be used; and the mails and/or interstate wire communications were in fact used.

30.    During the pendency of a lawsuit brought in this judicial district by Abselet to execute his Judgment against the First National Center styled *Howard L. Abselet v. Alliance Lending Group, Inc., et al.*, Case No. FJ-14-00004-F, United States District Court for the Western District of Oklahoma, Defendants Massoud Aaron Yashouafar and Solyman Yashouafar caused their agent and attorney to file documentation, on four separate occasions from and after November 26, 2014, to-wit, ECF Doc. Nos. 81, 82, 105 and 116, which filings included attempts to seek dismissal of Abselet's causes of action and remedies, that Defendants Massoud Aaron Yashouafar and Solyman Yashoufar, in fact, own Alliance Property Investments, Inc.

31.     After it became apparent to them that Abselet could avoid the need for further litigation in the aforementioned lawsuit by executing upon the shares of Alliance Property Investments, Inc., Defendant Massoud Aaron Yashoufar knowingly and willfully transmitted, via wire communications, on or about February 5, 2015, documentation to the Oklahoma Secretary of State intended to dissolve First National Building I, LLC.

32.     Thereafter, on April 29, 2015, the United States Marshal for the Central District of California did indeed cause execution to be made in Abselet's favor upon the Yashoufars' shares of Alliance Property Investments, Inc.

33.     After such execution, and after having purported to dissolve First National Building I, LLC, defendants Massoud Aaron Yashouafar and Solyman Yashouafar, despite not having complied with the order of a United States Magistrate Judge and having represented in writing to the United States District Court for the Western District of Oklahoma on 4 separate occasions that they own the shares of Alliance Property Investments, Inc., did knowingly and willfully submit across state lines via wire communication, and did cause on May 18, 2015 cause their attorney to submit to the Court, a document purporting to be a stock assignment of the shares of Alliance Property Investments, Inc. dated March 20, 2014, which document was false and part and parcel of the previously described fraudulent scheme to further deprive Abselet of his property. In the event such transfer did occur, such transfer was fraudulent on its face and further evidence of the unlawful enterprise described herein.

34.     Following the submission across state lines of such fraudulent document, Defendants Raymond Yashouafar, who has further registered and been responsible for certain websites relating to the First National Center, Justin Yashouafar and Roxanne Yashouafar Aboudi, who are children of Defendants Massoud Aaron Yashouafar and Solyman Yashoufar, did actively engage in, direct and conspire with said defendants, to knowingly and willfully cause a written communication to be sent to Abselet on July 1, 2015, via the mails and wire communications, threatening Abselet and indeed the United States Marshal with a lawsuit if Abselet took any further steps or made any further representations as to ownership of the shares of Alliance Property Investments, which would include representations to the United States District Court for the Western District of Oklahoma in pending litigation, which letter further included the threat of punitive damages.  Said communication included a deadline less than 24 hours prior to a court-ordered status conference in such litigation for Abselet to agree that the execution was invalid.

35.     By and through this exortionate threat, Defendants Raymond Yashouafar, Justin Yashouafar and Roxanne Yashouafar Aboudi, directly participated or conspired with Defendants Massoud Aaron Yashouafar and Solyman Yashouafar, who caused a separate attorney to send a substantially identical letter with respect to other of their corporate properties on the same date.

36.     Said written communication went far beyond a threat of litigation and was instead based on an objectively baseless sham, threatened Abselet should he rely upon a sale conducted by the United States Marshal under color of law, and demanded that he

refrain from taking legal positions in ongoing litigation, thereby interfering, knowingly and willfully, with such litigation.  Such written communication thereby constituted a clear and apparent threat intended to play upon Abselet's reasonable fear of economic harm in order to induce Abselet to give up the property rights associated with his Judgment and to be obtained through his execution upon the shares of Alliance Property Investments, Inc., and in so doing threatened to obstruct, delay or interfere with interstate commerce in that Abselet would be intimidated into taking no further action to recover upon his Judgment via the proceeds of sale of the First National Center, all in violation of the Hobbs Act, 18 U.S.C. § 1951.

37.     The aforedescribed fraudulent and extortionate conduct reflects the pattern and practice of an unlawful enterprise pursuant to 18 U.S.C. § 1962(c) by individuals, to-wit, Defendants Massoud Aaron Yashouafar, Solyman Yashouafar, Justin Yashouafar, Raymond Yashouafar, and Roxanne Yashouafar Aboudi, through their role in the direction or control of the enterprise or conspiracy as heretofore described, which enterprise has operated over several years by and through an association in fact which has from time to time utilized and operated via different corporate forms, specifically, First National Building I, LLC, First National Building II, LLC, LLC, FNC-OKC I, LLC, FNC-OKC II, LLC and Alliance Property Investments, Inc.

38.     Said defendants have further acquired or have purported to acquire an interest in such enterprise or enterprises in their corporate form to the detriment of Abselet and, pursuant to 18 U.S.C. § 1964(a), should be required to divest themselves thereof.

39.     Through the aforedescribed conduct, said defendants have actively engaged and/or conspired pursuant to 18 U.S.C. § 1962(d) with their co-defendants to engage, in a pattern of conduct, via the previously described predicate acts, which acts bear a relation as part and parcel of an overall scheme by common family members and business associates to deprive, through continued violation of the mail and wire fraud statutes, Abselet of his property and which threatens to continue given the pendency of Abselet's litigation and the recency of these defendants' actions, as recently as one week ago.

40.     Said activity is related insofar as it has reflected a common purpose, target, and method, to-wit: the use of a fraudulent artifice and wrongful devices over several years to deprive Abselet of his property by placing the assets of Defendants Massoud Aaron Yashouafar and Solyman Yashouafar outside the reach of creditors.  *Gutierrez v. Givens*, 989 F. Supp. 1033 (S.D. Cal. 1997).

41.     Abselet has been damaged as a result due to such racketeering activities by the stymying and deprivation of his rights under state and federal law to collect upon the Judgment, recognized as a cognizable injury in *Gutierrez v. Givens*, 989 F. Supp. 1033, 1039 (S.D. Cal. 1997).   Such damages include, without limitation, the attorney fees and costs incurred in the stymied collection of his Judgment, and the loss of or diminution in the value of his Judgment and/or the associated ownership interest in the First National Center through Alliance Property Investments, Inc.

42.     In the alternative, should the Court find that the April 29, 2015 execution of Abselet upon the shares of Alliance Property Investments, Inc. was invalid, or that the

transfer of such shares actually occurred, the transfer of such shares was fraudulent as to Abselet.

43.     Such claim is sufficient related to Abselet's claims under 18 U.S.C. § 1962 to form part of the same case or controversy, thereby conferring supplemental jurisdiction on this Court pursuant to 28 U.S.C. § 1367.

44.     Said transfer, purportedly made on or about March 20, 2014 for little to no consideration, and made to Defendant Roxanna Yashouafar Aboudi, the daughter of Defendant Solyman Yashouafar, an insider, came after the entry of the Judgment against Defendants Massoud Aaron Yashouafar and Solyman Yashouafar and, the transfer by such defendants thereby was fraudulent, having come after Abselet's claim arose, and was made with the intent of hindering, delaying and defrauding Abselet.  According to the letter dated July 1, 2014 from an attorney in California, it appears that Defendants Justin Yashouafar and Raymond Yashouafar also now purport to have taken an assignment of the shares.

45.     Such alleged transfer was concealed, even during the pendency of the above described litigation, with said defendants affirmatively representing to the court on 4 occasions that they retained ownership of Alliance Property Investments, Inc.

46.     Such transfer was also fraudulent because, in exchange for a transfer of ownership of the entity which owned First National Building I, LLC, Defendants Massoud Aaron Yashouafar and Solyman Yashouafar received no reasonably equivalent value, having stated in recent discovery that they received approximately $800 for the assignment.

WHEREFORE, premises considered, Plaintiff Howard L. Abselet prays that the Court enter judgment in his favor with respect to his causes of action pursuant to 18 U.S.C. §§ 1962(c) and (d), award him, pursuant to 18 U.S.C. § 1964, treble damages against them resulting from the deprivation of his property, the reasonable costs of suit, including attorney fees and costs, and the entry of appropriate injunctive relief ordering defendants to divest themselves of their interest, direct or indirect, in the enterprise and/or the corporate entities operating as part of and in conjunction therewith, and to enjoin them from engaging in further similar conduct, and to further declare, in accordance with 18 U.S.C. § 1964(a), that the purported assignment of the shares of Alliance Property Investments, Inc. to Roxanne Yashouafar Aboudi, and/or Defendants Justin Yashouafar and Raymond Yashouafar, did not occur and that title to such shares rested with Defendants Massoud Aaron Yashouafar and Solyman Yashoufar and has been validly executed upon by Abselet or, in the alternative, to find that such transfer was fraudulent as to Abselet under state law, and avoid the transfer or levy execution thereon.

s/John D. Stiner
John D. Stiner, OBA #18148
STINER LAW FIRM, PLLC
P.O. Box 1837
Oklahoma City, OK 73103
Telephone: (405) 245-3827
Email: john@stinerlaw.com

and

Tony Gould, OBA #18564
BROWN & GOULD, PLLC
136 N.W. 10th, Suite 200
Oklahoma City, OK 73103
Telephone: (405) 235-4500
Facsimile: (405) 235-4507
Email: tgould@browngouldlaw.com

**ATTORNEYS FOR PLAINTIFF
HOWARD L. ABSELET**